UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RONALD MARTIN,
     Plaintiff,


   v.                                                           CIVIL ACTION NO.
                                                           08-11971-MBB

SUSAN CLAVIN,
JESSIE FURTADO,
JUSTIN PRARIO,
STEVEN O'BRIEN,
JAMES BENDER,
KENNETH NELSON,
HAROLD CLARKE and
COLLEEN ROSALES,
     Defendants.

**MEMORANDUM AND ORDER RE:**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**
**<u>(DOCKET ENTRY # 23)</u>**

**September 9, 2010**

**BOWLER, U.S.M.J.**

     Pending before this court is a motion to dismiss the amended complaint filed under Rule 12(b)(6), Fed. R. Civ. P. ("Rule 12(b)(6)") by defendants Susan Clavin ("Clavin"), Jessie Furtado ("Furtado"), Justin Prario ("Prario"), Steven O'Brien ("O'Brien"), James Bender ("Bender"), Kenneth Nelson ("Nelson"), Harold Clarke ("Clarke") and Colleen Rosales ("Rosales") (collectively: "defendants").  (Docket Entry # 23).  The amended complaint filed by Ronald Martin ("plaintiff") alleges violations of his federal and state constitutional rights during his confinement at the Old County Correctional Center ("OCCC") in

Bridgewater, Massachusetts.  (Docket Entry # 18).  He seeks both injunctive relief and damages.  (Docket Entry # 18).

## PROCEDURAL BACKGROUND

Plaintiff originally filed a pro se complaint on November 26, 2008, alleging numerous violations of his rights as an inmate while in the custody of the Massachusetts Department of Correction ("DOC").  (Docket Entry # 1).  On March 26, 2009, defendants moved to dismiss the complaint.  (Docket Entry # 11).[1] Plaintiff moved to amend the complaint on May 18, 2009, and submitted a copy of the amended complaint on the same date. (Docket Entry # 18).  On February 8, 2010, this court allowed the motion to amend.[2]  (Docket Entry # 20).  Defendants now move to dismiss the amended complaint.  (Docket Entry # 23).

## STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6), this court "accept[s] as true all well pleaded facts in

---

[1]  Defendants' original motion to dismiss (Docket Entry # 11) became moot when this court allowed plaintiff leave to amend the complaint and defendants thereafter filed the pending motion to dismiss the amended complaint.  (Docket Entry # 23).

[2]  Ordinarily, an amended complaint supersedes a prior complaint absent an incorporation by reference.  Kolling v. American Power Conversion Corporation, 347 F.3d 11, 16 (1st Cir. 2003).  Because plaintiff is proceeding pro se, this court will construe the amended complaint as incorporating by reference the exhibits attached to the original complaint.  See Barret v. Lombardi, 239 F.3d 23, 28 (1st Cir. 2001).

the complaint and draw[s] all reasonable inferences in favor of the plaintiffs." <u>Gargano v. Liberty Intern'l Underwriters, Inc.</u>, 572 F.3d 45, 48 (1st Cir. 2009).  "The general rules of pleading require 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  <u>Id.</u>  "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Id.</u>

    "To survive a motion to dismiss, the complaint must allege 'a plausible entitlement to relief.'"  <u>Fitzgerald v. Harris</u>, 549 F.3d 46, 52 (1st Cir. 2008).  While "detailed factual allegations" are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement for relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atlantic v. Twombly</u>, 550 U.S. 554, 555 (2007); <u>Thomas v. Rhode Island</u>, 542 F.3d 944, 948 (1st Cir. 2008).  Additionally, "a well-pleaded complaint may proceed even if . . . actual proof of those facts is improbable."  <u>Bell Atlantic v. Twombly</u>, 550 U.S. at 556.  The amended complaint is also subject to liberal construction in light of plaintiff's pro se status.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Rockwell v. Cape Cod Hosp.</u>, 26 F.3d 254, 255 (1st Cir. 1994).


<u>FACTUAL BACKGROUND</u>

Plaintiff is in the custody of the DOC and is incarcerated at OCCC.  (Docket Entry # 1).  He alleges that on January 17, 2008, Clavin, a female corrections officer at OCCC, filed a false disciplinary report against him.  (Docket Entry # 18).  According to the disciplinary report, while in the visiting room strip area, plaintiff commented that Clavin had a "slammin hoop." (Docket Entry # 1, Ex. A).  Clavin believed the comment was derogatory and asked Furtado what the term "hoop" meant.  (Docket Entry # 1, Ex. A).  When plaintiff was asked what the term "hoop" meant, he stated it meant a "beautiful mind."  (Docket Entry # 1, Ex. A).  Several officers and inmates informed Furtado that the term "hoop" meant buttocks.  (Docket Entry # 1, Ex. A).

Clavin filed a disciplinary report asserting that plaintiff violated DOC rules and regulations by "talking in a disrespectful and sexual manner" to her.  (Docket Entry # 1, Ex. A).  Plaintiff contends that Clavin and Furtado falsified statements in the disciplinary report by avowing that the term "hoop" was in reference to female buttocks.  (Docket Entry # 18).

On February 14, 2008, the DOC conducted a disciplinary hearing to review the disciplinary report regarding plaintiff's January 17, 2008 exchange with Clavin.  (Docket Entry # 1, Ex. C).  Plaintiff states he was denied video evidence and two requested witnesses at that hearing.  (Docket Entry # 1, Ex. C). Plaintiff claims that Prario, as the hearing officer presiding

4

over the disciplinary hearing, was an "accomplice" to the falsified reports. (Docket Entry # 1, Ex. C).

Plaintiff was found guilty at the disciplinary hearing of using "obscene, abusive or insolent language" in violation of DOC regulations. (Docket Entry # 1, Ex. A). Plaintiff was confined to his cell for four days on "awaiting action status" and punished with a 60 day loss of visitation rights. (Docket Entry # 18). Plaintiff further complains he was deprived of "transitional process to a lower security facility." (Docket Entry # 18). Plaintiff states that he suffered a loss of opportunity for employment, salary increase, "good time" credits and access to DOC assistance programs. (Docket Entry # 18).

On March 24, 2008, plaintiff contends that O'Brien, Superintendent at OCCC, admitted to not having viewed the evidence relevant to plaintiff's appeal. (Docket Entry # 18). On April 26, 2008, plaintiff filed a grievance with O'Brien requesting that the disciplinary offenses filed by Clavin be dismissed "due to exculpatory evidence being concealed as well as insufficient evidence presented." (Docket Entry # 1, Ex. F). On April 18, 2008, O'Brien sent a letter to plaintiff indicating that he had reviewed the audiocassette relevant to plaintiff's appeal. (Docket Entry # 1, Ex. G).

On April 30, 2008, plaintiff's grievance was denied. (Docket Entry # 1, Ex. E). On May 11, 2008, plaintiff filed an

appeal.  (Docket Entry # 1, Ex. F).  On May 16, 2008, O'Brien denied the appeal.  (Docket Entry # 1, Ex. F).

On March 25, 2008, plaintiff initiated correspondence with Clarke, Commissioner of the Department of Corrections.  (Docket Entry # 1, Ex. H).  Plaintiff asserts that Clarke and his subordinates, Nelson, Rosales and Bender, failed to take action in correcting the false disciplinary report.  (Docket Entry # 18).  Plaintiff alleges that the collective failure of defendants to correct the false disciplinary report resulted in a violation of plaintiff's rights under federal and state law.

## DISCUSSION

The amended complaint alleges that defendants "failed to provide equal and just laws under constitutions 1, 14, 8, by intentionally filing false reports, causing cruel and unusual punishment. [sic]  And deliberate indifference violation of regulations."[3]  (Docket Entry # 18).  The amended complaint also

_____

[3]  The amended complaint sets forth a general allegation that defendants violated plaintiff's First Amendment rights. (Docket Entry # 18).  While inmates continue to enjoy certain protections under the First Amendment while incarcerated, these protections are limited by concerns of prison safety and security.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Gomes v. Fair, 738 F.2d 517, 524 (1st Cir. 1984) ("First Amendment applies in prisons but, must be accommodated to the unusual conditions there").  Plaintiff's First Amendment rights are curtailed by correctional goals.  Furthermore, plaintiff does not substantiate his First Amendment claim with any factual contentions.  Therefore, to the extent that he makes any First Amendment allegations, they are dismissed as conclusory and for lacking plausibility.

alleges violations of Article 26 of the Massachusetts Declaration of Rights ("Art. 26") and violations of plaintiff's rights under state law.[4]  (Docket Entry # 18).  The amended complaint primarily claims violations of federal constitutional rights. Thus, this court will address seriatim plaintiff's Fourteenth and Eighth Amendment claims and plaintiff's claims under Massachusetts law.


I.  Due Process Claim

     Plaintiff alleges that the DOC's disciplinary sanctions violated his due process rights under the Fourteenth Amendment. (Docket Entry # 18).  Plaintiff undoubtedly retains due process rights notwithstanding his incarceration.  See Turner v. Safley, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution").  While the Due Process Clause protects individuals "against deprivation of life, liberty, or property; those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin,

_____

     [4]  The amended complaint alleges a violation of the Fifth Amendment, yet there is no indication of federal action in the complaint.  (Docket Entry # 18).  The Fifth Amendment applies to actions of the federal government and not to private individuals or state or local governments.  See Gerena v. Puerto Rico Legal Services, 697 F.2d 447, 449 (1st Cir. 1983).  Insofar as plaintiff asserts a due process violation under the Fifth Amendment, these due process claims are taken as part of the Fourteenth Amendment analysis.

545 U.S. 209, 221 (2005).

Plaintiff's status as an inmate requires a showing that he endured a restraint of liberty imposing an "atypical and significant hardship on the inmate in relationship to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); see Overton v. Bazzetta, 539 U.S. 126, 137 (2003). The Court in Sandin determined that placing a prisoner in segregated confinement for 30 days was not an atypical and significant hardship and therefore did not implicate a prisoner's due process liberty interest. See Sandin, 515 U.S. at 484. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Id. at 485.

Plaintiff contends that his confinement in an "awaiting action" cell for four days and loss of visitation rights for 60 days constituted a violation of his due process rights. (Docket Entry # 18). Applying Sandin, the DOC disciplinary sanctions imposed upon plaintiff do not amount to an atypical or significant hardship in the ordinary incidents of prison life. In Sandin, the plaintiff, an inmate, faced disciplinary sanctions after being found guilty of using angry and foul language directed at a prison official. Id. at 475. The Supreme Court rejected the due process claim, noting that disciplinary sanctions effectuate "prison management and prisoner

8

rehabilitative goals." Id. at 485; see also Montayne v. Haynes, 427 U.S. 236, 242 (1976) (prisoner's due process liberty interest is not implicated when degree of confinement remains within sentence imposed upon the prisoner); see also Abrazinski v. DuBois, 940 F.Supp. 361, 364 (D.Mass. 1996) (assignment to awaiting action unit prior to disciplinary hearing does not amount to punishment without due process). Hence, plaintiff's four day placement in an awaiting action cell does not contravene due process under Sandin.

The amended complaint additionally asserts a violation of existing liberty and property rights as a result of the disciplinary sanctions. (Docket Entry # 18). Specifically, plaintiff points to his 60 day loss of visitation privileges, loss of opportunity for transfer to a lower security facility and a loss of prospect for an increase in salary. (Docket Entry # 18). Plaintiff, however, fails to articulate a cognizable due process claim because work assignments and institutional programming are not recognized as due process liberty or property interests. See Dominique v. Weld, 73 F.3d 1156, 1160-1161 (1st Cir. 1996) (state's revocation of work release program and return of inmate to prison population did not violate Due Process Clause); see also Hastings v. Commissioner of Correction, 674 N.E.2d 221, 223 (Mass. 1997) (inmates not entitled to due process before revocation of privilege of work release program).

In sum, the type of disciplinary sanctions imposed upon plaintiff, including loss of visitation and transfer rights, are not atypical and significant hardships within the meaning of Sandin. See, e.g., Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454 (1989) (denial of visitation is "well within the terms of confinement ordinarily contemplated by a prison sentence"); see also Fiallo v. de Batista, 666 F.2d 729 (1st Cir. 1981) (dismissing the plaintiff's claims pertaining to prison transfer and property loss for failure to state causes of action); Drayton v. Commissioner of Correction, 751 N.E.2d 916, 919 (Mass.App.Ct. 2001) (the plaintiff was not deprived of protections of due process for disciplinary sanctions of 30 days in isolation and transfer to a higher security prison).  Loss of the visitation rights at issue does not implicate a liberty interest inasmuch as it remains within the parameters of plaintiff's sentence.  See, e.g., Overton v. Bazzetta, 539 U.S. at 134 ("[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior").

The amended complaint also alleges that plaintiff suffered a deprivation of "good time" credits.  (Docket Entry # 18).  When a disciplinary hearing may result in the loss of "good time" credits, due process dictates requisite procedural protections. "The inmate must receive:  (1) advance written notice of the

10

disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and reasons for the disciplinary action." See Superintendent Massachusetts Correctional Institution Walpole v. Hill, 472 U.S. at 454; see also McGuinness v. DuBois, 75 F.3d 794, 797-798 (1st Cir. 1996).  In the instant case, plaintiff received the requisite procedure required by due process.  Plaintiff was provided an advance written notice of the disciplinary report and an opportunity to request witnesses and evidence.  (Docket Entry # 1, Ex. B).  A February 14, 2008 disciplinary hearing was held to address the alleged misconduct and a statement of the facts providing the grounds for Clavin's disciplinary report was included.  (Docket Entry # 1, Ex. C).

Plaintiff's allegations complaining about being denied witnesses and video surveillance evidence likewise complies with procedural due process requirements in a prison setting. Plaintiff specifically objects to the absence of the surveillance video documenting the events of January 17, 2008.  (Docket Entry # 18).  As noted in the amended complaint, "All requested witnesses were present except for Lieutenant Kennedy . . . and [an] unknown witness."  (Docket Entry # 18).  The prison setting limits plaintiff's ability to call witnesses and present

evidence.  Thus, although the Supreme Court in <u>Wolff</u> affirmed an inmate's right to call witnesses, prison officials must have the necessary discretion to keep a disciplinary hearing within reasonable limits and refuse to call certain witnesses.  <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. at 566.

All of plaintiff's requested witnesses were present at the disciplinary hearing with the exception of Lieutenant Kennedy and an unknown witness.  (Docket Entry # 18).  The DOC, however, retains the right to deny witnesses that are deemed irrelevant or unnecessary.  <u>See</u> <u>Hudson v. Commissioner of Correction</u>, 725 N.E.2d 540 (Mass. 2000) (upholding denial of inmate's request for witness testimony on grounds it would have been duplicative); <u>see</u> <u>also</u> <u>Sabree v. Duval</u>, 2008 WL 4926645, *4 (Mass.Super. December 06, 2008) (affirming hearing officer's broad discretion to keep hearings within reasonable limits by "excluding live witness testimony that is 'irrelevant, unnecessary, or hazardous'").

Furthermore, in order to state a claim which will survive a motion to dismiss, "it is not sufficient merely to allege that complainant's requests to call witnesses or submit written statements at a prison disciplinary hearing were denied."  <u>Hurney</u> <u>v. Carver</u>, 602 F.2d 993, 995 (1st Cir. 1979) (allegations must have plausible support showing prison officials clearly abused their considerable discretion); <u>see</u> <u>also</u> <u>Ponte v. Real</u>, 471 U.S. 491, 497 (1985) (inmate's right to present witnesses is

12

constrained by the penological need to provide swift discipline in individual cases); see also Abrazinski v. DuBois, 940 F.Supp. at 364 ("[a] disciplinary hearing is not a criminal trial and the inmate is not entitled to the full panoply of rights available at trial").

In the present case, Prario indicated the reasons for the denial of witnesses in the report. (Docket Entry # 1, Ex. C). Lieutenant Kennedy was deemed irrelevant to the outcome of the disciplinary hearing and the unknown witness was excluded because the request was vague. (Docket Entry # 1, Ex. C).

With respect to the alleged denial of evidence, the record at the disciplinary hearing indicates that no such video evidence exists. (Docket Entry # 1, Ex. C). In addition, any video surveillance would not have contained an audio component, rendering it irrelevant to a disciplinary violation based on a verbal exchange. (Docket Entry # 1, Ex. O). Thus, plaintiff fails to articulate any factual support for the contention of being denied video surveillance evidence.

Furthermore, plaintiff was afforded the opportunity to present evidence in his defense and review the disciplinary report filed by Clavin. (Docket Entry # 18). There is no indication that defendants denied plaintiff procedural due process rights by failing to accommodate all requested witnesses and the video surveillance evidence. O'Brien, Superintendant of

13

OCCC, reviewed the audiocassette of the original disciplinary hearing in connection with plaintiff's disciplinary appeal. (Docket Entry # 1, Ex. G).  Plaintiff's disciplinary hearing was allowed this additional review at the discretion of O'Brien, as audio review of inmate disciplinary hearings is not typically allotted to inmate disciplinary appeals at OCCC.  (Docket Entry # 1, Ex. G).  Upon review of the audiocassette, O'Brien determined that there was no evidence warranting a change in the decision denying plaintiff's disciplinary appeal.  (Docket Entry # 1, Ex. G).

      In sum, plaintiff was afforded the procedural protections articulated in Wolff.  Thus, plaintiff does not have a viable claim for deprivation of good time credits without due process. Likewise, compliance with procedural due process eviscerates plaintiff's other complaints regarding the sanctions imposed. Alternatively, as previously discussed, such sanctions (awaiting action, loss of visitation, loss of opportunity for transfer and salary increase) do not constitute an atypical and significant hardship within the meaning of Sandin.

      In short, there is no plausible showing of an atypical and significant hardship under Sandin and thus no state created liberty interest sufficient to invoke due process protections. The record likewise fails to show any viable property interest. The absence of a liberty or property deprivation forecloses

plaintiff's due process claim.  See Overton v. Bazzetta, 539 U.S. at 126.  Furthermore, the disciplinary proceedings complied with state provisions pursuant to 103 C.M.R. § 430.15 (1993) as well as the Due Process Clause.

Insofar as plaintiff asserts a substantive due process claim, he fails to allege arbitrary or conscious shocking government action.  A violation of substantive due process arises by government action that "can properly be characterized as arbitrary, or conscious shocking, in a constitutional sense." Espinoza v. Sabol, 558 F.3d 83, 87 (1st Cir. 2008).

The disciplinary sanctions imposed upon plaintiff do not amount to conscious shocking conduct.  See Dutil v. Murphy, 550 F.3d 154, 160 (1st Cir. 2008) ("[a] violation of substantive due process is found when the government's conduct is so 'egregiously unacceptable, outrageous, or conscious shocking that the constitutional line has been crossed'") (citing Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990)).  "A substantive due process claim implicates the essence of state action rather than its modalities; such a claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible." Amsden v. Moran, 904 F.2d at 753.  Plaintiff does not plausibly allege that defendants' conduct was outrageous or conscious shocking.  To the extent that plaintiff asserts a substantive due

process claim, the complaint fails to set out a plausible

entitlement to relief.[5]


II.  Eighth Amendment and Article 26 Claims

     Plaintiff makes brevis and unadorned references to

"constitutions . . . 8" or "eigth [sic] . . . Amendment" and

"Article 26."  (Docket Entry # 18).  Liberally interpreting the

amended complaint, this court turns to the viability of an Eighth

Amendment and an Art. 26 claim on the basis of the disciplinary

sanctions plaintiff endured.  (Docket Entry # 18).

A.  Eighth Amendment Claim

     The Eighth Amendment prohibition against cruel and unusual

punishments does not require that prisons be entirely free of

discomfort.  See Rhodes v. Chapman, 452 U.S. 337, 349 (1981)

(double celling of inmates not cruel and unusual punishment); see

also Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Yet, egregious

---

     [5] Plaintiff's allegations regarding due process violations
under the Massachusetts Constitution are equally unavailing.
Plaintiff cannot maintain a state due process claim absent
pleading a state protected liberty interest.  See Matthews v.
Rakiey, 649 N.E.2d 770, 774 (Mass.App.Ct. 1995) (visitation
privileges in state correctional institutions do not amount to
protected liberty interest).  The disciplinary sanctions imposed
upon plaintiff do not implicate liberty or property interest
protected under the Massachusetts Constitution.  See Hudson v.
Commissioner of Correction, 674 N.E.2d 221, 225 (Mass. 1997)
(administrative order did "not affect the duration of the
plaintiffs' sentences or subject them to conditions different
from those customarily applied to other inmates").  Plaintiff's
state due process claim is not viable because plaintiff has not
been deprived of a liberty or property interest protected under
the Massachusetts Constitution.

prison conditions may violate the Eighth Amendment.  The Court's decision in Farmer v. Brennan, 511 U.S. 825 (1994), sets out the relevant analytical framework.

Undertaking the objective inquiry first, there must be a showing that the conditions result in a substantial risk of serious harm.  See Farmer, 511 U.S. at 834; see Hudson, 503 U.S. at 8; accord Calderon-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 64 (1st Cir. 2002).  Generally, punishments are objectively assessed by society's standards of decency.  See Hudson, 503 U.S. at 10 (use of excessive force by guards violated Eighth Amendment); accord Hutto v. Finney, 437 U.S. 678, 685 (1978) (prolonged assignment to punitive isolation cruel and unusual punishment); see also Estelle v. Gamble, 429 U.S. 97, 102 (1976).  One reliable, objective indicator relied on by courts to determine society's standards is legislation.  Gregg v. Georgia, 428 U.S. 153, 174 (1976); see Strachan v. Ashe, 548 F.Supp. 1193, 1202 (D.Mass. 1982).  Conditions of confinement must not subject an individual to "wanton and unnecessary infliction of pain" nor be "grossly disproportionate to the severity of the crime warranting imprisonment."  Rhodes, 452 U.S. at 347; see Wilson, 501 U.S. at 299; Hutto, 437 U.S. at 685.  "Only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."  Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at

17

347); see Masonoff v. DuBois, 853 F.Supp. 26, 29 (D.Mass. 1994)

Plaintiff does not plausibly allege that his disciplinary sanctions resulted in a sufficiently serious deprivation, nor does he assert any infliction of pain by defendants.  Plaintiff was retained in his cell for four days on "awaiting action" status and later punished by a 60 day loss of visitation rights. Disciplinary sanctions of this nature do not constitute Eighth Amendment violations.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981) ("conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional"). Plaintiff fails to objectively show that defendants acted to deprive him of a life necessity.[6]  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  Whitley v. Albers, 475 U.S. 312, 319 (1986) (gunshot wound during prison riot not cruel and unusual punishment absent deliberate indifference).  Thus, plaintiff fails to show a serious deprivation as a result of the defendants' actions amounting to a plausible Eighth Amendment claim.

B.  Article 26 Claim

---

[6] Accordingly, it is not necessary to address the subjective inquiry as to whether the defendants acted with "deliberate indifference" to the inmate's well-being.  Farmer, 511, U.S. at 834; Estelle, 429 U.S. at 104-05; see Surprenant, 424 F.3d at 18-19 (deliberate indifference comparative to criminal recklessness); accord Calderon-Ortiz, 300 F.3d at 64.

Art. 26 of the Massachusetts Declaration of Rights states in pertinent part:  "No magistrate or court of law, shall demand excessive bail or sureties, impose excessive fines, or inflict cruel or unusual punishments."  M.G.L.A. Const. Pt. 1, Art. 26. The rights guaranteed under Art. 26 are as broad as those rights protected under the Eighth Amendment.  See Torres v. Commissioner of Correction, 695 N.E.2d at 204.  "[A] prisoner seeking relief under this provision of the Massachusetts Constitution must point to both (1) a condition or situation "which poses a substantial risk of serious harm"; and (2) facts establishing that a prison official 'has knowledge of such a situation and ignores it'". Torres v. Commissioner of Correction, 695 N.E.2d at 204; see also Michaud v. Sheriff of Essex County, 458 N.E.2d 702,708 (Mass. 1983) (sanitary conditions at county jail violate Art. 26 where no cell had flush toilet, sink or running water).

Plaintiff fails to demonstrate that he was subject to a substantial risk of harm.  Moreover, plaintiff does not allege a conscious disregard on the part of prison officials of a substantial risk of harm to plaintiff.  Plaintiff fails to allege any facts that support a violation of his rights under Art. 26.


III.  Certiorari for Cause of Action under State Law

To the extent that the amended complaint states violations of state law for improper disciplinary proceedings, defendants

argue that the statute of limitations bars these claims.  Inmates challenging alleged improprieties in prison disciplinary proceedings under Massachusetts law must proceed by way of an action in the nature of certiorari pursuant to Massachusetts General Laws chapter 249, section 4 ("ch. 249, § 4").  <u>See</u> <u>Murphy v. Superintendent, Mass. Correctional Inst., Cedar Junction</u>, 489 N.E.2d 661, 663 (Mass. 1986) (treating inmates' claim as action in the nature of certiorari "even though the complaint speaks in terms of an action for declaratory and injunctive relief"); <u>see also</u> <u>Shabazz v, Cole</u>, 69 F.Supp.2d 177, 190 (D.Mass. 1999).

Certiorari actions must be commenced within 60 days after the conclusion of the proceeding being challenged under ch. 249, § 4.  Mass. Gen. Laws. ch. 249, § 4.  Failure to commence certiorari within 60 days after the conclusion of the proceeding is such a "serious misstep" that the action must be dismissed when not timely filed.  <u>Pidge v. Superintendent Mass. Correctional Inst., Cedar Junction</u>, 584 N.E.2d 1145, 1148 (Mass.App.Ct. 1992); <u>see also</u> <u>Malone v. Civil Serv. Comm'n.</u>, 646 N.E.2d 150, 151 (Mass.App.Ct. 1995) (holding that certiorari complaint filed beyond the 60 day period should have been dismissed); <u>Shabazz v. Cole</u>, 69 F.Supp.2d at 191.

The 60 day statute of limitations under ch. 249, § 4 begins to run when the last administrative action takes place.  <u>See</u> <u>Committee for Public Counsel Services v. Lookner</u>, 716 N.E.2d 690,

693 (Mass.App.Ct. 1999).  The last administrative action for
purposes of certiorari is typically marked by the date the
hearing officer issued the final decision.  Id.  In the case at
bar, the last administrative action was O'Brien's denial of
plaintiff's disciplinary appeal on May 16, 2008.  (Docket Entry #
1, Ex. F).  Plaintiff filed the original complaint with this
court on November 26, 2008, well beyond the 60 day period.
(Docket Entry # 1).  To the extent that plaintiff asserts error
in the disciplinary proceedings as a state claim, the 60 day
limitations period in ch. 249, § 4 bars the claim.


IV.  Remaining State Law Claims

     Plaintiff contends that defendants are liable in their
official and individual capacities pursuant to:  (1)
Massachusetts General Laws chapter 268, section 6A ("ch. 268, §
6A");[7] (2) Massachusetts General Laws chapter 124, section 1(i);
(3) Massachusetts General Laws chapter 127, section 38E(c); (4)
Massachusetts General Laws chapter 125, section 1(c); and (5)
Massachusetts General Laws chapter 125, section 14.  (Docket
Entry # 18).  Such unsupported and conclusory assertions of

---

     [7] Ch. 268, § 6A is a criminal statute pertaining to "false
reports or testimony before state departments, board or
commissioner, false entries in company books or statements,
aiders or abettors."  Mass. Gen. Laws ch. 268, § 6A.  As a
criminal statute that fails to expressly or impliedly create a
private cause of action, plaintiff cannot pursue a private cause
of action against defendants under ch. 268, § 6A.

liability cannot survive defendants' motion to dismiss.  See
Ashcroft v. Iqbal,_U.S._, 129 S.Ct. 1937, 1949-1950 (2009)
("Court need not credit bald assertions or unverifiable
conclusions").  Even if defendants do not seek to dismiss these
"claims," they do not survive review under 28 U.S.C. § 1915
("section 1915").  Section 1915 allows this court to dismiss a
complaint sua sponte if the claims are based upon frivolous
factual allegations and legal conclusions.  See 28 U.S.C. §
1915A(b); See Neitzke v. Williams, 490 U.S. 319, 325 (1989); see
also Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st
Cir. 2001).  The foregoing conclusory and unsupported statutory
"claims" are therefore subject to section 1915 dismissal.


                          CONCLUSION
     For the foregoing reasons, the motion to dismiss the amended
complaint (Docket Entry # 23) is **ALLOWED.**



                         ___/s/ Marianne B. Bowler___
                         **MARIANNE B. BOWLER**
                         United States Magistrate Judge



                              22